IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RASHEEDA S.  ADAMS         :       CIVIL ACTION
                            :
           v.               :
                            :
KILOLO KIJAKAZI, Acting      :       NO.  20-3591
Commissioner of Social Security[1]   :

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                        March  14, 2022

       Rasheeda S. Adams ("Plaintiff") seeks review of the Commissioner's decision denying her application for supplemental security income ("SSI").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence.

## I.    **PROCEDURAL HISTORY**

       Plaintiff protectively filed for SSI on August 15, 2017,[2] alleging disability beginning on November 13, 2015, as a result of panic attacks, mood swings, trouble with concentration, memory loss, attention-deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, and sleep issues.  Tr. at

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and should be substituted for Andrew Saul as the defendant in this action.  Fed. R. Civ. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Plaintiff also applied for disability insurance benefits ("DIB") at the same time, tr. at 176, but it does not appear that Plaintiff proceeded with that application as no adjudication of a DIB claim is in the record at the initial stage and the ALJ addressed only the claim for SSI.  Id. at 17.  Plaintiff's brief confirms that her appeal addresses only her SSI application.  Doc. 17 at 1.

103, 178, 214.[3]  Plaintiff's application was denied initially, id. at 89-103, 107-11, and

Plaintiff requested a hearing before an ALJ, id. at 114, which took place on August 20,

2019.  Id. at 36-63.  At the hearing, Plaintiff amended her alleged onset date to August

15, 2017, the protective filing date.  Id. at 44.  On September 12, 2019, the ALJ found

that Plaintiff was not disabled.  Id. at 17-30.  The Appeals Council denied Plaintiff's

request for review on June 2, 2020, id. at 1-3, making the ALJ's September 12, 2019

decision the final decision of the Commissioner.  20 C.F.R. § 416.1472.

Plaintiff commenced this action in federal court on July 22, 2020, Doc. 1, and the

matter is now fully briefed and ripe for review.  Docs. 17, 22, 25.[4]

## II.  **LEGAL STANDARDS**

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.  Whether the claimant is currently engaged in
> substantial gainful activity;

---

[3]Plaintiff filed two prior applications for benefits.  The first, filed on January 8,
2010, was denied on December 2, 2011, after a hearing by an ALJ.  Tr. at 90.  The
second filed on January 6, 2014, concluded when the Appeals Council denied Plaintiff's
request for review after an administrative hearing.  Id.  Plaintiff's initial brief raised a
challenge to the denial of her 2014 application, Doc. 17 at 8-9, but she has withdrawn
that challenge.  Doc. 25 at 8 n.3.

[4]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal
Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 4

2.      If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;

3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the RFC to perform her past work; and

5.      If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether substantial evidence supports the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."

Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir.

2005)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at 431.

## III.   DISCUSSION

### A.   ALJ's Findings and Plaintiff's Claims

The ALJ found that Plaintiff suffers from the severe impairments of PTSD, major

depressive disorder ("MDD"), and ADHD, and the non-severe impairments of eczema,

obesity, hypertension, and a history of substance use in remission.  Tr. at 19.  Although

Plaintiff complained of neck pain and headaches, the ALJ found that these were not

medically diagnosed impairments.  Id. at 19-20.  The ALJ next found that Plaintiff did

not have an impairment or combination of impairments that met the Listings, id. at 20,

and that Plaintiff retained the RFC to perform work at all exertional levels with the

following non-exertional limitations:  work in a low stress job, defined as having only

occasional decision making and only occasional changes in the work setting; can perform

simple, routine tasks at a consistent pace but not a production rate pace, where each task

must be completed within a strict time deadline; and only occasional interaction with

supervisors, the general public, and with co-workers; and no work involving shared tasks.

Id. at 21.  Plaintiff had no past relevant work but, based on the testimony of the

vocational expert ("VE"), the ALJ found that Plaintiff could perform jobs in the national

economy including warehouse worker, laundry laborer, and bench assembler.  Id. at 29-

30.  Thus, the ALJ found that Plaintiff was not disabled.  Id. at 30.

Plaintiff claims that (1) the ALJ improperly rejected the opinions of Plaintiff's

treating psychiatrist and an examining psychologist, (2) the ALJ failed to include all of

Plaintiff's limitations in the hypothetical posed to the VE, and (3) the ALJ's decision is constitutionally defective based on the improper appointment of the Commissioner of Social Security.  Doc. 17 at 6-20.[5]  Defendant responds that the ALJ properly considered the opinions offered by the treating psychiatrist and examining psychologist, and the ALJ included the limitations supported by the record in the hypothetical posed to the VE.  Doc. 22 at 18-25.  Although Defendant agrees that the statutory provision governing the appointment of the Commissioner violates the separation of powers to the extent it limits the President's authority to remove the Commissioner without cause, she argues that such violation does not provide a basis to remand the case.  Doc. 22 at 2-14.

### B.    Summary of the Record

Plaintiff was born on March 6, 1978, making her 39 years old at the time of her application, and 41 at the time of the ALJ's decision.  Tr. at 57, 178.  She completed high school and has no past relevant work.  Id. at 57.[6]

Plaintiff has a history of mental health treatment beginning prior to her alleged onset date.[7]  The treatment notes in the record indicate that Plaintiff treated with LVF in 2014 for MDD (recurrent, moderate), PTSD, panic disorder without agoraphobia, and

---

[5]I have reordered Plaintiff's claims for ease of discussion.

[6]During Plaintiff's Mental Status Evaluation with Kevin Hoffman, Psy.D., she reported having completed two years of college.  Tr. at 507.  During her treatment at the Lenape Valley Foundation ("LVF"), she advised Amy Bryant, LPC, that she completed high school and took some courses in community college.  Id. at 582.

[7]The record reflects that Plaintiff was involved in an automobile accident in 2009, wherein she hit and killed a motorcyclist, and that she was found to have cocaine and alcohol in her system and was charged with vehicular homicide.  Tr. at 508.

polysubstance dependence in sustained full remission.  Tr. at 580-84 (5/20/14 – Intake Evaluation), 587-88 (8/27/14 – Discharge Summary).[8]  On February 25, 2017, Plaintiff was seen in the emergency department of Lower Bucks Hospital complaining of depression and feeling overwhelmed.  Id. at 292.  She was diagnosed with MDD (single episode, mild).  Id. at 294.

The Treatment Plan from LVF dated just prior to Plaintiff's alleged onset date (August 15, 2017) indicates that she was treating for Bipolar I Disorder (current or most recent episode depressed, moderate), PTSD, ADHD, and cocaine and alcohol use disorders (moderate).  Id. at 629 (7/11/17 Treatment Plan).  At a September 11, 2017 LVF medication management visit, Plaintiff's prescriptions were Klonopin, topiramate, and Zoloft.[9]  Id. at 679.  Steven Weiss, CRNP, oversaw Plaintiff's medication management at LVF for much of the relevant period.  On September 11, 2017, nurse practitioner ("NP") Weiss indicated that Plaintiff reported difficulty sleeping sometimes and social anxiety.  Id. at 679.  On mental status examination ("MSE"), he noted that Plaintiff's mood was anxious and her affect was congruent and constricted, but in all

---

[8]It appears that Plaintiff returned to LVF on November 3, 2016, when she sought to switch medication management providers from Family Services Association of Bucks County ("FSA").  Tr. at 718.

[9]Klonopin (generic clonazepam) is a benzodiazepine used to treat seizure disorders and panic disorder including agoraphobia.  See https://www.drugs.com/klonopin.html (last visited March 3, 2022).  Topiramate (brand name Topamax) is an anticonvulsant used to treat certain types of seizures and to prevent migraine headaches.  See https://www.drugs.com/mtm/topiramate.html (last visited March 3, 2022).  Zoloft (generic sertraline) is an antidepressant.  See https://www.drugs.com/zoloft.html (last visited March 3, 2022).

other respects the MSE was normal.  Id. at 679-80.  When Plaintiff next returned on February 19, 2018, she explained that she had "family emergencies" that prevented her from coming.  Id. at 676.  Again, at her medication management visit with NP Weiss, the only MSE notations out of the ordinary were an anxious mood and congruent and constricted affect.  Id. at 676-77.  In April 2018, NP Weiss noted that an increase in Plaintiff's Zoloft helped Plaintiff's symptoms of depression, and Klonopin helped prevent panic attacks.  Id. at 673.

At her medication management visit on June 4, 2018, Plaintiff reported that she recently stopped all of her medications because she was pregnant, and NP Weiss agreed that she should discontinue topiramate and Klonopin and prescribed hydroxyzine.[10]  Tr. at 670.  On August 20, 2018, Plaintiff reported that the hydroxyzine was helping with panic attacks.  Id. at 667.  She did not return to NP Weiss until after giving birth to her daughter in November 2018.  Id. at 664.  In January, 2019, Plaintiff reported that she restarted Klonopin after the birth, and NP Weiss also restarted her Zoloft and continued with hydroxyzine.  Id.  Plaintiff reported being irritable, easily startled, nervous, and distressed.  Id.  In April 2019, Plaintiff reported she was "not as jumpy or panicky" on Klonopin.  Id. at 661.  On July 15, 2019, Plaintiff reported to NP. Weiss that she had stopped taking Zoloft for a few months "due to not helping and was eating more."  Id. at 739.  She reported nightmares, flashbacks, panic attacks, and checking doors often, id. at

---

[10]Hydroxyzine (brand name Vistaril) is an antihistamine used to treat allergic skin reactions and can be used as a sedative to treat anxiety and tension.  See https://www.drugs.com/hydroxyzine.html (last visited March 3, 2022).

739, and NP Weiss noted that her PTSD was worse, observing that she was nervous and anxious, depressed, sad, fearful, and apprehensive.  Id. at 740.

Plaintiff began seeing psychiatrist Katrina Shchupak, M.D., at LVF on July 30, 2019.  Tr. at 736.[11]  Dr. Shchupak noted on MSE that Plaintiff lacked appropriate eye contact, was depressed/sad, had a constricted affect, was paranoid and suspicious, had auditory hallucinations of her mother calling her, and was tearful and anxious.  Id. at 737.  Dr. Shchupak noted that it was unclear whether Plaintiff has "bipolar II vs ADHD" and expressed concern that the Adderall,[12] prescribed by Plaintiff's primary care physician for ADHD, could be worsening Plaintiff's anxiety and other symptoms and urged Plaintiff to discontinue Adderall.  Id.  The doctor told her to continue on Zoloft and added Abilify[13] to her regimen.  Id.

The Behavioral Health Program at FSA has also provided Plaintiff individual psychotherapy and related mental health treatment since 2014.  Tr. at 499, 537.  On August 18, 2017, Miki McPherson, M.Ed., an outpatient clinician at FSA, noted diagnoses of PTSD, polysubstance-related disorder, and MDD (recurrent, moderate), and that Plaintiff had shown no improvement recently due to the stresses of dealing with legal

---

[11]Plaintiff's medication management was transferred at LVF from NP Weiss to Dr. Shchupak in July 2019.  Tr. at 737.

[12]Adderall contains central nervous system stimulants used to treat ADHD and narcolepsy.  See https://www.drugs.com/adderall.html (last visited March 3, 2022).

[13]Abilify is an antipsychotic medication used to treat schizophrenia and is used with antidepressant medication to treat MDD.  See https://www.drugs.com/abilify.html (last visited March 3, 2022).

problems stemming from a substance relapse and auto accident.  Id. at 854-55.  On March 13, 2018, in a letter concerning Plaintiff's disability application, Ms. McPherson identified Plaintiff's diagnoses as listed above and stated that her treatment focused on steps to lessen the frequency and intensity of anxiety, panic attacks, depression, racing thoughts and to maintain abstinence.  Id. at 500.  The letter indicates that Plaintiff had a relapse with substance use within the last year, resulting in a 90-day incarceration.  Id. at 501.[14]  In October 2018, Ms. McPherson's notes indicate that Plaintiff was working on becoming emotionally stable by addressing current stressors and taking action to eliminate unnecessary stressors, but struggled with consistency as she was easily triggered to become upset and emotional.  Id. at 859.  At that time, Plaintiff was preparing for the birth of her second child on November 29, 2018.  Id.  Ms. McPherson's therapy notes indicate that the stressors in Plaintiff's life included her pregnancy, id., and a medical crisis her estranged mother was facing, id. at 1155 (9/20/18), and then the pressure of caring for her 3-year-old son and newborn daughter when her husband was working long hours.  Id. at 1161 (12/13/18), 1165 (2/26/19).  On August 7, 2019, Ms. McPherson provided an update on Plaintiff's progress, noting diagnoses for PTSD, MDD

---

[14]On March 28, 2017, Plaintiff reported to NP Mary Mangan, CRNP, at LVF that she recently relapsed when she drank alcohol and smoked marijuana she believed was laced with PCP.  Tr. at 690.  She blacked out and was involved in an automobile accident.  Id.  Plaintiff was incarcerated from September 21, 2017 to December 20, 2017.  Id. at 389-410.  Plaintiff explained to NP Weiss that she had been prevented from attending treatment during this time due to "family emergencies."  Id. at 676.  On October 13, 2017, during Plaintiff's incarceration, Robert Gerstman, D.O., performed a psychiatric evaluation, noting that Plaintiff said that Zoloft and Topamax were "good to a point."  Id. at 459.  Her mood was emotional, affect was congruent, thought processes were goal directed, cognition was intact, insight limited, and her judgment was poor.  Id.

(recurrent), anxiety disorder (severe), and ADHD.  Id. at 537.  "[Plaintiff's] mental disorders are considered to be severe and persistent as evidenced by the need for continuation of psychiatric care to treat active symptoms and counseling services for therapeutic supports."  Id.

With respect to Plaintiff's ADHD, she saw Larry Warren Cohen, M.D., her primary care physician, for treatment of ADHD when she was having problems focusing, having racing thoughts, and forgetfulness, for which Dr. Cohen prescribed Adderall XR. Tr. at 482 (Progress Note Dated 7/19/17).  The following month, Dr. Cohen noted that Plaintiff was "doing much better on Adderall."  Id. at 487.  In January 2018, Dr. Cohen added a dose of immediate release Adderall in the afternoons when Plaintiff complained that the extended Adderall was wearing off.  Id. at 493.  The following month, Dr. Cohen noted that Plaintiff's ADHD was stable on the combination of extended release and immediate release Adderall, and her anxiety was stable on clonazepam.  Id. at 532.  In October 2018, the doctor indicated that Plaintiff had stopped taking Zoloft due to pregnancy, but her ADHD and depression were stable.  Id. at 527.

Dr. Shchupak, who treated Plaintiff at LVF, completed a medical opinion form on July 30, 2019.[15]  Tr. at 515-17.  The doctor indicated that Plaintiff was seriously limited

---

[15]The form was addressed to NP Weiss, but was completed by Dr. Shchupak who had taken over Plaintiff's treatment at LVF.  The form asks the medical source to rate the Plaintiff's abilities using a 5-point scale, (1)  "Unlimited or Very Good," (2) "Limited but satisfactory," defined as the patient "has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week," (3) "Seriously limited," defined as the patient "has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week," (4) "Unable to meet competitive standards," defined as the patient "has noticeable difficulty (e.g. distracted from job

in the abilities to make simple work decision and adhere to basic standards of neatness and cleanliness; Plaintiff was unable to meet competitive standards in the areas of remembering work-like procedures, maintaining regular attendance and be punctual, sustaining an ordinary routine without special supervision, maintaining attention for two hours, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and responding appropriately to changes in a routine work setting; and she had no useful ability to work in coordination with or proximity to others without being unduly distracted, complete a normal workday and work week without interruptions from psychologically based symptoms, interact appropriately with the general public, and deal with normal work stress. Id. at 515. Dr. Shchupak also noted that Plaintiff would be absent more than three days a month due to her impairments or treatment. Id. at 517. The doctor noted that "[d]ue to symptoms of severe anxiety and depression[, Plaintiff has] minimal capacity to tolerate environmental stress. Severe PTSD makes [it] very difficult [for Plaintiff] to interact with others because of symptom occurrence." Id. at 516.

Kevin Hoffman, Psy.D., conducted a Mental Status Evaluation on April 3, 2018, and found that Plaintiff's thought processes were coherent and goal directed, but her

---

activity) from 21 to 40 percent of the workday or work week," and (5) "No useful ability to function," defined as the patient has "an extreme limitation" and "cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting." Tr. at 515.

attention and concentration were impaired and her insight and judgment were fair.  Tr. at 510.  Dr. Hoffman diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder with panic attacks, PTSD, polysubstance use disorder, and a rule out diagnosis of unspecified personality disorder.  Id. at 511.  Dr. Hoffman found that as a result of Plaintiff's severe anxiety and panic attacks, she had moderate limitations in her abilities to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, and interact with the public, and that she had marked limitations in her abilities to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with supervisors and coworkers, and respond appropriately to usual work situations and changes in a routine work setting.  Id. at 512-13.

On April 10, 2018, at the initial consideration stage, Richard Williams, Ph.D., concluded from his review of the records that Plaintiff suffered from depressive/bipolar disorder, anxiety and obsessive compulsive disorders, personality and impulse control disorders, and trauma and stressor related disorders.  Tr. at 96.  Dr. Williams found that Plaintiff had mild limitation in her ability to understand, remember, or apply information and in adapting or managing oneself, and moderate limitation in the abilities to interact with others and concentrate, persist, or maintain pace.  Id.

At the administrative hearing held on August 20, 2019, Plaintiff testified that she is unable to work because on a daily basis stress triggers anxiety, which causes an inability to breathe, and also flashbacks and nightmares related to a car accident where someone was fatally injured.  Tr. at 44-45, 50.  Plaintiff testified that she isolates and

does not go out as a result of these feelings.  Id. at 46.  She also testified to experiencing tiredness and dry mouth, which are side effects of her medication.  Id.

**C.    Plaintiff's Claims**

    1.    Opinion Evidence and RFC Assessment

Plaintiff's first two claims are related.  She asserts that the ALJ failed to properly consider the opinions of her treating psychiatrist and the consultative examiner, and failed to include additional limitations in the RFC assessment.  Doc. 17 at 9-20.  Defendant responds that the ALJ properly evaluated the opinion evidence and was not required to include limitations in the VE hypothetical that were not supported by the record.  Doc. 22 at 19-25.

    a.    Dr. Shchupak & Dr. Hoffman

As noted, Dr. Shchupak became Plaintiff's treating psychiatrist at LVF at the end of July 2019, taking over for NP Weiss, at which time the doctor completed an assessment of Plaintiff's abilities to perform work-related activities.  The ALJ did not find Dr. Shchupak's opinion persuasive.

> Dr. Katrina Shchupak, [Plaintiff's] psychiatrist, submitted a medical source statement in July 2019 ([tr. at 515-17]).  It noted that [Plaintiff] would be largely unable to meet competitive stand[ard]s or have no useful ability to function in 12 out of 18 areas.  [Plaintiff] would be limited but satisfactory in the areas of "be aware of normal hazards and take precautions," "ask simple questions or request assistance[,]" "carry out short and simple instructions," and "understand and remember very short and simple instructions."  Dr. Shchupak noted [Plaintiff] has needed ongoing psychiatric care for multiple years with difficulty control[ling] symptoms and [Plaintiff] had shown only marginal adjustment.  Lastly, [the doctor found] that

13

> [Plaintiff] would miss more than 3 days per month due to her
> impairments or treatment.  The undersigned does not find this
> opinion to be persuasive.  Dr. Shchupak based her opinion on
> a single medical evaluation, where [Plaintiff] presented with
> more extreme or abnormal clinical findings than present at
> [Plaintiff's] remaining treatment visits.  [Plaintiff] also
> reported that she had stopped taking her Zoloft for the past
> couple of months ([id. at 739]).  [Plaintiff's] treatment records
> with both her therapist ([id. at 741-1189]) and psychiatrist or
> prescribing CRNP ([id. at 538-740]) both show that [Plaintiff]
> remains functioning during the period under review when
> compliant with regular therapy and medication management.

Tr. at 28.

The ALJ also did not find Dr. Hoffman's opinions in his April 3, 2018

consultative examination persuasive.

> Dr. Hoffman opined in April 2018 that [Plaintiff] would have
> marked difficulty understanding, remembering, and carrying
> out complex instructions and moderate limitations in
> understanding, remembering, and carrying out simple
> instructions ([tr. at 505-14]).  [Plaintiff] would have moderate
> limitation interacting with the public and marked limitations
> in interacting with supervisors and co-workers and in
> responding appropriately to work situations or changes.  Dr.
> Hoffman was asked but did not identify any particular signs
> to support these findings, but wrote it was based on
> [Plaintiff's] diagnoses of severe anxiety, depression, [PTSD],
> and panic attacks.  The undersigned does not find this opinion
> to be persuasive.  Dr. Hoffman did also not have the benefit
> of a complete record review.  Dr. Hoffman based his opinion
> on a single medical evaluation, where [Plaintiff] presented
> with more extreme or abnormal clinical findings than present
> at [Plaintiff's] remaining visits.

Id. at 28.  Plaintiff complains that the ALJ's consideration of these assessments was

flawed.  Doc. 17 at 13-17.

The new regulations, which apply to Plaintiff's claim because it was filed after March 27, 2017, focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 416.920c(a).[16]  The regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, relationship including the length and purpose of the treatment relationship and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program.  Id. § 416.920c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  Id. § 416.920c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  Id. § 416.920c(c)(1).  In addition, "[t]he more consistent a medical opinion(s) . . .  is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. § 416.920c(c)(2).

"The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing

---

[16]In contrast, the regulations applicable to prior applications spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources.  20 C.F.R. § 416.927.

Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also Plummer, 186 F.3d at 429.  Plaintiff argues that the ALJ rejected these opinions for the wrong reasons.  Doc. 25 at 3.

Plaintiff complains that the ALJ's analysis is flawed because Dr. Shchupak's opinion was supported by her own examination findings, that the ALJ misconstrued the record in saying that Plaintiff "remains functioning . . . when compliant with regular therapy and medication management," and "as reported by [Plaintiff], on bad days she remains functional and able to provider [sic] childcare," Doc. 17 at 13 (quoting Tr. at 27) (error in the original), and that the doctor's assessment was consistent with the treatment record.  Id. at 13-15.  Similarly, Plaintiff argues that Dr. Hoffman's assessment was consistent with the record.  Id. at 17-18.  Defendant responds that the ALJ properly determined that these opinions were not persuasive utilizing the new regulations.  Doc. 22 at 20-21.

The ALJ noted that Dr. Shchupak's and Dr. Hoffman's assessments were completed when Plaintiff was experiencing more significant symptoms than at other times.  Tr. at 737.  In April 2018, Dr. Hoffman noted that Plaintiff was "sobbing throughout the entire evaluation and obviously anxious, rubbing her hands and knees and rocking a great deal."  Id. at 509.  However, during his treatment of Plaintiff, NP Weiss repeatedly indicated that Plaintiff had no abnormal movements.  Id. at 676 (2/19/18), 670

(6/4/18), 667 (8/20/18), 664 (1/7/19), 661 (4/22/19).  Similarly, NP Weiss consistently

noted that Plaintiff had no auditory or visual hallucinations.  Id. at 679-80 (9/11/17), 676-

77 (2/19/18), 674 (4/6/18), 670 (6//4/18), 667-68 (8/20/18), 665 (1/7/19), 661 (4/22/19),

740 (7/15/19).

Until July 15, 2019, Mr. Weiss noted normal MSEs but for repeated notations of

an anxious mood and congruent and constricted affect.  Tr. at 679 -80 (9/11/17), 676-77

(2/19/18), 674 (4/6/18), 670 (6//4/18), 667-68 (8/20/18), 665 (1/7/19), 661 (4/22/19).  At

her July 15, 2019 visit, NP. Weiss noted that Plaintiff's PTSD was worse and she was

nervous and anxious, depressed, sad, fearful, and apprehensive.  Id. at 740.  She had not

taken Zoloft for a few months.  Id. at 739.  These worsening symptoms were consistent

with Dr. Shchupak's observations the following month, but not representative of

Plaintiff's more typical symptoms.  Similar to most of NP Weiss's notes, Dr. Cohen,

Plaintiff's primary care physician from whom she sought treatment for ADHD, noted

normal MSEs during each of Plaintiff's visits during the relevant time.  Id. at 487

(8/17/17 – "Insight:  good judgement.  Mental Status:  normal mood and affect and active

and alert.  Orientation:  to time, place, and person.  Memory:  recent memory normal and

remote memory normal."), 490 (12/26/17 – same), 492 (1/11/18 – same).  Thus, the

ALJ's conclusion that Plaintiff presented to Drs. Shchupak and Hoffman with more

extreme symptoms than were present in her treatment record is supported by substantial

evidence.

The records also support the ALJ's conclusion that Plaintiff is functional when she

takes her medications.  Plaintiff complains that the ALJ substituted her own opinion that

Plaintiff "remain[ed] functioning," citing a few specific instances of more significant symptoms before and after the alleged onset date.  Doc. 17 at 14.  During this period, Plaintiff reported to her therapist at FSA that she cared for her 3-year-old all day and night because her husband worked from early morning until late at night, tr. at 1149 (8/9/18), and was managing her 3-year-old and a newborn after her daughter's birth when her husband worked long days and nights.  Id. at 1161 (12/13/18), 1165 (2/26/19).  NP Weiss's records include notations that Plaintiff was doing well in her junior year of online college.  Id. at 667 (8/20/18), 673 (4/6/18).  As noted above , NP Weiss's treatment notes indicate that Plaintiff's PTSD was worse with symptoms of anxiety, fearfulness, and apprehension at the July 15, 2019 visit, when Plaintiff said she had not taken her Zoloft "for a few months."  Id. at 739. This coincides with Ms. McPherson's treatment notes on July 1, 2019, indicating noticeable anxiety and a notation that Plaintiff's symptoms "have worsen[ed], which is impacting her functioning at home and causing tension in her marriage."  Id. at 1178 (7/1/19).

Thus, I find no error in the ALJ's characterization of the evidence and conclude that the ALJ's determination that Dr. Shchupak's assessment and that of Dr. Hoffman were not persuasive is supported by substantial evidence.

b.    VE Hypothetical

Plaintiff next complains that the ALJ erred in failing to include limitations assessed by Drs. Shchupak and Hoffman in the hypothetical posed to the VE.  Doc. 17 at 19-20.  Defendant responds that the ALJ was not required to include limitations that she found were not supported by the record.  Doc. 22 at 23-24.

In order for the VE's testimony to constitute substantial evidence, the hypothetical question posed must consider all of the claimant's impairments which are supported by the record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  "Hypotheticals are considered deficient when important factors are omitted or the claimant's limitations are not adequately portrayed."  Emery v. Astrue, Civ. No. 07-2482, 2008 WL 5272454, at *3 (E.D. Pa. Dec. 18, 2008) (Robreno, J.) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).

Here, as previously explained, the ALJ properly found that the assessments of Drs. Shchupak and Hoffman were not persuasive.  As such she was not required to include the limitations contained in those assessments in the hypothetical.

2.   Challenge to the Appointment of the Commissioner of Social Security

Relying on Seila Law LLC v. Consumer Financial Protection Bureau, 140 S.Ct. 2183 (2020), Plaintiff argues that the ALJ's decision is constitutionally defective because the appointment of the Commissioner of Social Security violates the separation of powers.  Doc. 17 at 6-8.  Although Defendant agrees that the statute governing the appointment of the Commissioner of Social Security violates the separation of powers, she maintains that this does not support setting aside the decision of the ALJ in this case. Doc. 22 at 2-14.

In Seila Law, the Supreme Court examined the authority of the Director of the Consumer Financial Protection Bureau ("CFPB") in the context of Article II of the Constitution vesting executive power in the President.  140 S. Ct. at 2197.  The Court

held that "the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." Id. The Court described the structure of the CFPB as "an independent agency led by a single Director and vested with significant executive power," and concluded that the lack of presidential authority to remove such an officer at will had "no basis in history and no place in our constitutional structure." Id. at 2201.

The Court compared the CFPB to other agencies, including the Social Security Administration, and found important differences.

> After years of litigating the agency's constitutionality, the Courts of Appeals, parties, and *amici* have identified "only a handful of isolated" incidents in which Congress has provided good-cause tenure to principal officers who wield power alone rather than as members of a board or commission. "[T]hese few scattered examples" – four to be exact – shed little light . . . .
> . . . .
> Third, the CFBP's defenders note that the Social Security Administration (SSA) has been run by a single Administrator since 1994. That example, too, is comparatively recent and controversial. President Clinton questioned the constitutionality of the SSA's new single-Director structure upon signing it into law. In addition, unlike the CFPB, the SSA lacks the authority to bring enforcement actions against private parties. Its role is largely limited to adjudicating claims for Social Security benefits.
> . . . .
> . . . [T]hese isolated examples are modern and contested. And they do not involve regulatory or enforcement authority remotely comparable to that exercised by the CFPB. The CFPB's single-Director structure is an innovation with no foothold in history or tradition.

Id. at 2202 (internal citations omitted).  Thus, in finding a separation of powers violation in the for-cause restriction on removal of the Director of the CFPB, the Court distinguished the SSA from the CFPB.

Moreover, after determining that "the CFPB's leadership by a single independent Director violates the separation of powers," the Court in Seila Law addressed the remedy for the constitutional violation. 140 S. Ct. at 2207-08.  At issue was the enforceability of the CFPB's civil investigative demand issued to a law firm.  Rather than simply dismissing the agency's enforcement action, the Court determined that "the removal provision can be severed from the other statutory provisions relating to the CFPB's powers and responsibilities," id. at 2209, noting that "[w]e think it clear that Congress would prefer that we use a scalpel rather than a bulldozer in curing the constitutional defect we identify today." Id. at 2210-11.  The Court remanded the matter for a determination whether the civil investigative demand was validly ratified.  Id. at 2211.

Here, Defendant agrees that the provision limiting the President's authority to remove the Commissioner of Social Security without good cause violates the separation of powers, Doc. 22 at 2, but here the parties' agreement ends.  Plaintiff contends that because the Commissioner delegates authority to ALJ's to hear and decide cases pursuant to regulations promulgated by an unconstitutionally appointed Commissioner, the administrative decision is constitutionally defective.  Doc. 17 at 7-8.  Defendant argues that the appointment of the ALJ who decided this case was ratified by an Acting

Commissioner, removeable at will, and that Plaintiff has not and cannot show that the removal restriction caused the denial of her claim.  Doc. 22 at 3.[17]

My colleague, the Honorable Marilyn Heffley, recently addressed Seila Law's applicability in the Social Security appeals context.  See Wicker v. Kijakazi, Civ. No. 20-4771, 2022 WL 267896 at *8-10 (E.D. Pa. Jan. 28, 2022).  After reviewing several such cases from across the country, Judge Heffley observed that the district courts have relied on another recent Supreme Court case in rejecting the separation of powers argument in Social Security appeals.  Id. at *9 (citing Collins v. Yellen, 141 S. Ct. 1761 (2021)). Collins involved the for-cause removal restriction for the single director of the Federal Housing Finance Agency ("FHFA"), which the Supreme Court found violated the separation of powers.  The Court instructed that "whenever a separation-of-powers violation occurs, any aggrieved party *with standing* may file a constitutional challenge." 141 S. Ct. at 1780 (emphasis added).  To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'"  Id. at 1779 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful

---

[17]Plaintiff does not appear to dispute that in 2018 the Acting Commissioner of Social Security ratified the ALJ's appointment, or that an Acting Commissioner, unlike a duly appointed Commissioner, is removable at will.  Doc. 25 at 8.  Plaintiff argues that because the ALJ's and Appeals Council's decision in 2019 and 2020 were under the authority of a Commissioner subject to unconstitutional removal protection, their power to decide Plaintiff's case was unlawful. Id.

conduct' of the defendant, not to the provision of law that is challenged." Id. (quoting

Allen v. Wright, 468 U.S. 737, 751 (1984)).[18]

Judge Heffley next explained the application of Collins to a Social Security

benefits review case, relying on a case arising out of the Western District of Washington.

> In Collins, the Directors of the FHFA adopted an
> amendment . . . to certain financial agreements that
> "materially changed the nature of the agreements" and
> resulted in the companies in which plaintiffs were
> shareholders transferring to the U.S. Treasury "at least $124
> billion dollars more than the companies would have had to
> pay" under the prior form of the agreements.  The plaintiffs in
> Collins thus had an identifiable basis to contend that but for
> the unconstitutional removal provision, the President may
> have removed and appointed a different Director who would
> have disapproved of the adoption (or implementation) of the .
> . . [a]mendment.
> In contrast, there is nothing showing the
> Commissioner or the SSA implemented new and relevant
> agency action that may have turned upon the President's
> inability to remove the Commissioner.  Plaintiff has not
> identified any new regulations, agency policies or directives
> Commissioner Saul installed that may have affected her
> claims.  Plaintiff thus fails to show how or why [the unlawful]
> removal clause possibly harmed her.

Wicker, 2022 WL 267896, at *10 (quoting Lisa Y. v. Comm'r of Soc. Sec., No. C21-

5207, 2021 WL 5177363, at *7 (W.D. Wash. Nov. 8, 2021) (internal citations omitted));

see also Kowalski v. Kijakazi, Civ. No. 20-1783, 2022 WL 526094, at *10-11 (M.D. Pa.

---

[18]In Seila Law, the Supreme Court "found it sufficient that the challenger
sustain[ed] injury from an executive act that allegedly exceeds the official's authority."
140 S.Ct. at 2196.  In Collins, the Supreme Court held that the traceability requirement
was satisfied because the shareholders suffered a "pocketbook injury" directly traceable
to an amendment adopted by the directors of the FHFA that "materially changed the
nature of their agreements."  141 S.Ct. at 1779.

Feb. 22, 2022) (requiring nexus between removal restriction and denial of application for disability benefits); Mor v. Kijakazi, Civ. No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) (same).

Here, Plaintiff does not identify any traceable injury linked to the allegedly unconstitutional removal clause.  Instead, she argues that the allegedly unconstitutional structure of the Social Security Administration deprived her of a valid administrative adjudicatory process and the authority for an ALJ to hear and decide claims derives from the Commissioner.  Doc. 17 at 7-8; see also Doc. 25 at 8.  Like Judge Heffley, I do not find that this is sufficient to establish her standing.  "Instead of merely tracing her injury – the denial of disability benefits – to Commissioner Saul's ability to delegate power to ALJs and the Appeals Council in general, . . .  [Plaintiff's] burden is higher:  she must be able to trace that injury to the actual unconstitutional removal clause, which is the unlawful conduct in this matter."  Wicker, 2022 WL 267896, at *10; compare Collins, 141 S. Ct. at 1779 ("[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to the 'allegedly unlawful conduct' of the defendant. . . . Because the relevant action in this case is the . . . amendment, and because the shareholders' concrete injury flows directly from that amendment, the traceability requirement is satisfied."), with Wicker, 2022 WL 267896, at *10 ("Commissioner Saul did not promulgate a new action affecting or injuring Wicker . . . .  Commissioner Saul merely occupied the Commissioner role . . . .  [T]he agency continued to function as it had [before Seila Law], given that the removal clause was the only constitutional defect.").  Plaintiff has failed to establish any nexus between the removal restriction and

24

the denial of her application for benefits.  Therefore, I reject Plaintiff's challenge to the

ALJ's decision based on Seila Law.

## IV.    **CONCLUSION**

The decision of the ALJ is supported by substantial evidence.  The ALJ properly

considered the opinion evidence utilizing the new criteria.  In addition, Plaintiff is not

entitled to remand based on her separation of powers claim regarding the appointment of

the Commissioner.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHEEDAH S. ADAMS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  20-3591 |
| Commissioner of Social Security | : | |

## **O R D E R**

AND NOW, this  14th    day of March, 2022, upon consideration of Plaintiff's

brief and statement of issues (Doc. 17), Defendant's response (Doc. 22), and Plaintiff's

reply (Doc. 25), and after careful consideration of the administrative record (Doc. 11), IT

IS HEREBY ORDERED that:

1.    Judgment is entered affirming the decision of the Commissioner of Social
      Security and the relief sought by Plaintiff is DENIED, and

2.    The Clerk of Court is hereby directed to mark this case closed.

BY THE COURT:

/s/ Elizabeth T. Hey

_____

ELIZABETH T. HEY, U.S.M.J.